IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 2004 Session

## STATE OF TENNESSEE v. ROBERTO REYES-ARMENTA AND ARMANDO LOPEZ-OROZCO

**Direct Appeal from the Criminal Court for Sumner County**
**No. 816-2003     Jane Wheatcraft, Judge**

---

**No. M2004-00419-CCA-R3-CD Filed December 7, 2004**

---

The State appeals from an adverse ruling on a suppression motion. The State contends that the trial court erred in finding the consent to search was not knowing or voluntary and that discovery of the contraband was not inevitable. The State avers that the standard of review should be *de novo* without presumption of correctness. The judgment of the trial court is affirmed, and the cause is remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Dee David Gay, Assistant District Attorney General, for the appellant, State of Tennessee.

Joe D. Harsh, Gallatin, Tennessee, for the appellee, Roberto Reyes-Armenta.

Cheryl J. Skidmore, Gallatin, Tennessee, for the appellee, Armando Lopez-Orozco.

### OPINION

This case arose from a vehicle stop and search on I-65 by the Highway Interdiction Team of the 18th Judicial District Task Force. The occupants of the stopped vehicle were two young Hispanic males. A search of the vehicle resulted in the discovery of approximately nineteen ounces of methamphetamine. The codefendants, Roberto Reyes and Armando Lopez, were indicted for possession of over 100 grams of a Schedule II controlled substance with intent to sell or deliver. The trial court suppressed the seized evidence, finding that the consent to search was not knowing and

voluntary. The State appeals, contending that the trial court erred in finding the consent involuntary and unknowing and in holding that discovery of the contraband was not inevitable.

Our review of a trial court's findings of fact in a suppression hearing has, by longstanding precedent, been deferential. The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, this Court is not bound by the trial court's conclusions of law. State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts found by the trial court are questions of law that this Court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The appellant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

The State claims that deference to the trial court's findings in this cause is inappropriate. It bases this claim on the contention that the trial court relied exclusively on the videotape and a transcript of the dialogue between the officers and the defendants for its finding of unknowing and involuntary consent. The State further argues that the trial court made no findings of credibility and, thus, our review should be purely *de novo* without a presumption of correctness. State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000).

On September 12, 2003, Officer Jody Starks, a member of the 18th Judicial District Drug Task Force assigned to the Highway Interdiction Team, was stationed on I-65 observing northbound traffic. Officer Starks' attention was drawn to the defendants' vehicle when the passenger exhibited what Starks called "the drive." The officer described "the drive" as a "dead-ahead stare" with no acknowledgment of the officer's vehicle. Another characteristic of this phenomenon is for drivers to ignore the police vehicle and to have their hands positioned at ten and two o'clock on the steering wheel. Starks had been trained that exhibition of "the drive" often indicates a criminal offender. Officer Starks followed the defendant's vehicle and said he observed the driver move into the right-hand lane in front of a tractor trailer, causing the truck to slow down. As a result, Starks said that the tractor trailer slowed, causing the trailer "to move throughout the lane of traffic." Due to what Starks deemed as unsafe passing, he initiated a stop of the defendant's vehicle.

Using English, Starks first questioned the driver, Roberto Reyes. The officer examined Reyes' Mexican driver's license and believed it to be fake. Starks ascertained that the defendants were going to Huntingboro, Indiana, and that the passenger, Lopez, was the owner of the vehicle. Starks also asked Reyes in English, "Can I search it?" Reyes responded, "yeah."

Officer Starks then began questioning the passenger, Armando Lopez. The officer attempted to inquire in Spanish if there were guns, beer, or drugs in the car, to which Lopez replied in the negative.[1] Starks then asked in English, "Can I search your car?" Not receiving an answer other than an inaudible word and "understand," Starks attempted the question in Spanish. Lopez responded by saying, "yeah." Starks issued Reyes a warning ticket. Officer Starks admitted that he had Spanish language consent to search forms in his vehicle but never produced them. He stated that he believed that he already had valid consent and that the defendants might not sign the forms.

Officer Mike Guthrie, another uniformed member of the Highway Interdiction Team, arrived on the scene, and the two officers began a search of the vehicle. The officers detected a heavy odor of cologne and what they believed to be the odor of burned marijuana. A bag of light-colored material was found under the passenger seat. The material was field tested and proved to be methamphetamine, later weighed as approximately nineteen ounces. The only offense charged against the defendants was possession of Schedule II for resale.

The codefendants were then taken to the Sumner County Jail for processing. The officers had made no attempt to contact federal immigration officials; however, Agent Robert Kinghorn, an immigration officer, happened to be at the Sumner County jail and issued detainers on the defendants. Agent Kinghorn testified that he or another agent would have responded to the scene of the stop had a request been made. Kinghorn also stated that his office had four agents with jurisdiction over forty counties and that they respond to police calls as they can, depending on priorities. Officer Guthrie testified that he had never had an immigration officer respond to his requests when he had detained suspected illegal aliens.

Judith Kenigson-Kristy was accepted as an expert interpreter and translator of the Spanish language. She had enhanced the audio taken from Officer Stark's videotape of the questioning of the defendants at the stop scene. A transcription of the dialogue was introduced as an exhibit. Ms. Kenigson-Kristy noted many repetitions of questions that indicated misunderstandings. She also stated that the word used by Officer Starks in his attempted Spanish for "search" was meaningless in Spanish.

Both defendants testified through an interpreter. Roberto Reyes testified that he was driving the vehicle with the permission of the owner and codefendant, Armando Lopez. Reyes completed nine years of school in Mexico and can read Spanish. Reyes stated that he did not intend to give permission to search the vehicle. He said that he thought the officer was referring to insurance when the officer asked for consent to search. He stated that he would not have given consent had he understood the officer's request. Reyes admitted that he had since learned more English from exposure to the language in the approximately four months he had spent in jail. He further admitted that he was an illegal alien and did not possess a valid license to drive in the United States.

___

[1] Officer Starks' Spanish language was learned in a three-day "Survival Spanish" course.

Armando Lopez testified that he was eighteen at the time of the arrest. He had completed nine years of school in Mexico and can read Spanish, but not English. He stated he had not intended to consent to the request to search. He did not understand the English word "search" nor the officer's attempted use of Spanish for "search." As to the latter, Lopez thought the officer was referring to the vehicle registration. He stated that he was nervous and was answering "yes" to every question.

The trial judge, in her ruling, found first that Reyes, the codefendant who was driving with permission of the codefendant owner, had standing to contest the search. Next, she characterized the stop itself as "marginal" but stated, "I could get by that." She then found that the videotape evidenced a lack of knowing and voluntary consent by the codefendants. She buttressed this conclusion by reference to the availability of Spanish language forms which were not utilized due to the officer's fear of a refusal to sign.

As stated previously, the State urges us to review by a strictly *de novo* standard on the authority of Binette, 33 S.W.3d at 217. Therein, the holding was " when trial court's findings of fact at a suppression hearing are based on evidence that does not involve issues of credibility, a reviewing court must examine the record *de novo* without a presumption of correctness." In justifying this stance, the State contends that the trial judge herein made no findings of credibility but focused solely on the videotape and the transcript of the verbal exchanges between the officers and the codefendants.

Our review of the record leads us to a contrary conclusion from that urged by the State. We feel that a careful reading of the trial judge's findings reflect a reliance by her on evidence other than the videotape and transcript. In Binette, the only evidence presented by the State at the suppression hearing was the videotape of the defendant's alleged driving errors. In a later case, the Odom standard of review was utilized due to the arresting officer's testimony being presented by the State in addition to the videotape. State v. Garcia, 123 S.W.3d 335, 343 (Tenn. 2003). In the instant case, in addition to the videotape, the State presented the two officers at the arrest scene and an immigration agent. The defendants and an expert translator-interpreter testified for the defense. We believe this is sufficient in itself to distinguish the Binette standard of review and to review under Odom instead. Moreover, the trial court's findings indicate that issues of credibility were included. Central to this would have been the ability of the codefendants to understand the officers' attempts at communication.

Initially we note that the trial judge classified the grounds for the vehicle stop as "marginal." The trial judge explicitly expressed her belief in the officer's description of the traffic violation, a credibility judgment in itself. However, the description of the stop as "marginal" indicates a strong skepticism of the officer's reliance on "the drive" phenomenon as an indication of criminal activity. The traffic violation was the only justification for the stop. While no explicit reference was made as to the codefendants' credibility, it is equally true that her finding agreed with their contention that they did not understand the requests in English or Spanish to search the vehicle. It would be

difficult, if not impossible, to rationalize the finding of lack of knowing and voluntary consent if the trial judge rejected the codefendants' testimony in this regard.

The next instance deals with the issue of inevitability of discovery rather than consent but serves as another example of judgment of credibility. Agent Kinghorn, the immigration officer, testified without reservation that, had his agency been contacted, "somebody would have responded from our office." The trial court implicitly rejected this testimony by saying it called for speculation by the trial court to find that a response would have been made.

Furthermore, even if credibility was not at issue, we would affirm the trial court's finding based on a purely *de novo* review of the videotape and transcript of the verbal exchange between the officers and the codefendants.

Our review of the video and transcript confirms the lack of coherent communication between the officers and the codefendants. The two exhibits contain numerous repetitions and non-responsive behavior by the codefendants, indicative of misunderstandings. During the questioning of Reyes, Officer Starks pointed to the nearby fast traffic in warning; however, the defendant is seen stepping toward the traffic. This defendant was told twice to raise his shirt with accompanying hand gestures. Reyes responded by pulling down his pants. The transcript containing the testimony of the expert translator-interpreter revealed that Officer Starks' Spanish word for "search" is either non-existent or mispronounced. Based on these glaring examples and the video and transcript as a whole, we would agree with the trial court that the consent to search was not knowing or voluntary.

Next, the State alleges that the evidence would have inevitably been discovered and, therefore, the illegally seized evidence is admissible. See Nix v. Williams, 467 U.S. 431, 444, 104 S. Ct. 2501, 2509, 81 L. Ed. 2d 377 (1984); State v. Cothran, 115 S.W.3d 513, 525 (Tenn. Crim. App. 2003). Officer Starks testified that had consent to search been withheld, nevertheless, on his suspicion of the codefendants' illegal alien status, they would have been detained. The officer said that he would have then held the codefendants for a sufficient time to summon an immigration officer to investigate their alien status. Upon a subsequent arrest on an illegal alien basis, the car would have been impounded and inventoried, and the contraband would have been discovered. Agent Kinghorn, an immigration officer, testified that he would have responded if called. Agent Kinghorn acknowledged the limited resources available to the immigration officers in covering forty counties with a staff of four individuals. Officer Guthrie testified that he had previously made two stops in which at least fifteen suspected illegal aliens were in each vehicle. His calls to immigration officials in those instances received no response and resulted in the suspects' release. Significantly, the arresting officers in this case never inquired as to the codefendants' status as aliens.

The trial judge rejected the contention of inevitable discovery by saying it would involve speculation to determine that the immigration officials would have responded. "[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings." Nix, 467 U.S. at 444, 104 S. Ct. at 2509. Implicit in the trial judge's

-5-

findings concerning this contention was a rejection of Agent Kinghorn's assertion that he would have responded if called. This finding is within the trial court's discretion, and we agree that Agent Kinghorn's assertion was speculative and not based on verifiable historical facts.

## Conclusion

Based on the foregoing and the record as a whole, we affirm the trial court's order of suppression as to both codefendants. The cause is remanded for further proceedings.

_____
JOHN EVERETT WILLIAMS, JUDGE